Copies mailed 11/4/20
Chambers of Judge Davison

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/4/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

PAUL REMBERT,

                    Petitioner,

     -against-

ANTHONY J. ANNUCCI, Acting Commissioner,
New York Department of Corrections and
Community Supervision,

                  Respondent.[1]

-------------------------------------------------------------X

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

**REPORT AND
RECOMMENDATION**

16 Civ. 7490 (CS) (PED)

No objections to this Report and Recommendation (the "R&R") have been received, and I therefore review it for clear error.  Finding no error, clear or otherwise, I hereby adopt the R&R as the decision of the Court.  The Petition is denied in its entirety.  As Petitioner has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find that conclusion debatable, no certificate of appealability will issue.  The Clerk of Court is respectfully directed to send a copy of this endorsement to Petitioner and to close the case.

SO ORDERED.

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.

12/1/20

## I. INTRODUCTION

     On September 12, 2012, a Westchester County jury convicted petitioner ("petitioner" or "defendant") of the crimes of second degree burglary (N.Y. 140.25(2)), petit larceny (N.Y. Penal Law § 155.25) and fourth degree crimi Penal Law § 145.00(1)).  He was sentenced on December 18, 2012 (as a sec offender) to a determinate prison term of ten years followed by five years of post-release supervision on the burglary conviction, and two definite one-year terms of incarceration on the petit larceny and criminal mischief convictions.

     Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus

---

[1] At the time he filed this action, petitioner Paul Rembert was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Greene Correctional Facility.  The DOCCS inmate locator website (nydoccslookup.doccs.ny.gov/, DIN 12-A-5754) indicates that petitioner was released to parole supervision on December 9, 2019.  Accordingly, Anthony J. Annucci, Acting Commissioner, DOCCS, is substituted as respondent pursuant to Rule 25(c) of the Federal Rules of Civil Procedure.  The Clerk of the Court shall amend the caption to reflect the substitution.

pursuant to 28 U.S.C. § 2254.[2]  This petition is before me pursuant to an Order of Reference dated November 21, 2016 (Dkt. #9).  For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.

## II. BACKGROUND[3]

A. Petitioner's Arrest

On the morning of November 12, 2011, petitioner entered a residential cooperative building located at 472 Gramatan Avenue in Mount Vernon, New York.  All of the entrances to the building were kept locked; visitors entered the front of the building using the buzzer/intercom system.  Petitioner entered the building as someone was exiting, and walked downstairs into the basement.  Video surveillance cameras had been installed in the basement.  One of the cameras showed petitioner using a screwdriver to enter a locked room in the basement (elevator room #3).  He took a dark suitcase from elevator room #3.

Later that morning, the President of the Board of the Directors of the co-op (Paul Donahue) was notified that two rooms in the basement had been broken into.  Donahue went

---

[2] Although petitioner has been released, "a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison.  Rather, the matter will remain a live case or controversy if there remains 'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction."  Jackson v. Annucci, No. 16 Civ. 1020, 2018 WL 2224988, at *3 (N.D.N.Y. May 15, 2018) (quoting Spencer v. Kemna, 523 U.S. 1, 7 (1998)).  Here, petitioner is presently under a term of post-release supervision and, thus, is suffering "continuous injury."  See Hill v. Mance, 598 F. Supp.2d 371, 378 (W.D.N.Y. 2009).  Accordingly, the instant habeas Petition is not moot.

Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

[3] Unless otherwise indicated, the information in this section is drawn from the instant petition (Dkt. #1), respondent's Affidavit in Opposition to Petition for a Writ of Habeas Corpus (Dkt. #6), respondent's Memorandum of Law and Exhibits (Dkt. #7) and petitioner's Reply (Dkt. #13).

down to the basement and observed broken locks on the doors to the meeting room and elevator room #3. He reviewed that morning's surveillance video from elevator room #3, which showed petitioner breaking into the room and removing the suitcase. There was no surveillance camera directed at the meeting room door. Donahue made a DVD copy of the surveillance footage and, on November 14, he notified the Mount Vernon Police Department about the video. Donahue was under the impression that the building superintendent had reported the burglary to the police on November 12th, but the police had no incident report relating to the burglary. Donahue arranged to meet with police officers the next day.

On November 15, 2011, Donahue showed police officers the two doors with damaged locks; the officers reviewed the video surveillance.[4] One of the officers contacted the detective division; two detectives responded to the location. Donahue took them down to the basement to view the doors, and handed one of them the DVD of the video surveillance (which the detectives later reviewed).

At around noon the next day (November 16, 2011), the detectives saw petitioner walking on Third Street, wearing sneakers that matched the ones in the surveillance video. H. 46.[5] Petitioner identified himself as Paul Rembert; the detectives had an outstanding arrest warrant for petitioner (for unlawful imprisonment). H. 47. He was arrested and brought to the police station. At the station, the detectives recovered a screwdriver from a knapsack inside a shopping cart that petitioner was wheeling when he was arrested. H. 55. Petitioner was placed in an

---

[4] Donahue brought the officers to his apartment and played the DVD copy of the surveillance video on his computer.

[5] Citations to "H. __" refer to pages from the transcript of pretrial hearings, held August 27-28, 2012.

interview room, read his *Miranda* rights and signed a form indicating he understood his rights and wished to speak with the detectives. In a videotaped statement, petitioner acknowledged the following: he entered the building looking for a place to sleep; he walked downstairs and saw a door partially open; he used a stick to open the door; he took an empty suitcase from the room to transport his clothes; he did not sleep in the building.[6] After the interview, one of the detectives took petitioner's black, red and white sneakers, which matched those worn by petitioner in the surveillance video.

B. Indictment and Pretrial Proceedings

Petitioner was indicted on February 6, 2012. Exh. 1.[7] On or about March 19, 2012, he moved *inter alia* to suppress admission of his videotaped statement. On May 17, 2012, petitioner moved to suppress the screwdriver. On August 28, 2012, following a pretrial hearing, the court denied petitioner's motion to suppress his statement and granted his motion to suppress the screwdriver. H. 90.

The prosecution then sought leave to introduce into evidence several of petitioner's prior convictions, to rebut his defense that he entered the building simply to find a warm place to sleep. Specifically, the prosecution sought to introduce evidence related to six prior convictions to establish petitioner's intent (relevant to the burglary charge). H. 90-105. Defense counsel opposed, arguing that introduction of the "large number of prior incidents" would confuse the

---

[6] Petitioner claimed he discarded the suitcase behind a certain supermarket the same day he took it. Detectives searched that location but did not find the suitcase.

[7] Citations to "Exh. __" refer to exhibits attached to Respondent's Memorandum of Law (Dkt. #7). Respondent has provided the court with a hard copy of the Memorandum of Law, attached to which are individually tabbed Exhibits 1-17. Although Exhibits 1-17 are accessible on ECF, the ECF page numbers do not correspond to the tabulated exhibits. Citations to page numbers following "Exh. __" refer to page numbers as they appear in the hard copy.

jury and would be highly prejudicial (outweighing its probative value). H. 105. The court

limited the prosecution's use of petitioner's prior convictions, as follows:

> I am going to grant certain aspects of the People's Ventimiglia application negating an explanation why he is in the building in this case because he has established a pattern.
>
> The defense here is that he went in just to find a place to sleep which was evidently his testimony before the grand jury, and it's very probative of the issue of his intent at the point he unlawfully enters.
>
> With regard to the May 11[th] incident, the People are permitted to inquire solely to the extent that he is found at 16 East 4[th] Street by the super in the basement at 11 p.m. and he is convicted of the possession of burglar's tools and the tools that are found inside his jacket pocket, that's the limit on that.[8]
>
> On December 11[th], 2004, he is found by a resident of 50 South Second Avenue with a pry bar to gain entry into the storage room, and that is the extent of the People's inquiry on the December 11, 2004.
>
> That's the extent the People are permitted on their case in chief to elicit prior bad acts because it does negate an innocent explanation as to why he is in this building and what his intent is at the point of entry.

H. 108-10.[9]

C. Trial

Following jury selection on September 6, 2012, the case proceeded to trial on September

7, 2012. During the direct testimony of one of the detective, defense counsel asked for a sidebar

at which the following exchange occurred:

> MS. WASSERMAN [defense counsel]: I would never say that there was any bad intent on Ms. Hochheiser's part, she took out the screwdriver in front of the jury, kept it on the table for approximately five minutes in plain view of the jury and then just lifted it up and put it on the other side.

---

[8] The "May 11[th] incident" refers to petitioner's conviction in May 2012 for possession of burglar's tools stemming from an incident in March 2011. Prior to trial, at the request of the prosecution, the court allowed the People to substitute Luan Zherka (a civilian who personally saw petitioner inside the basement of 16 East 4th Street) for the superintendent.

[9] Ultimately, the People did not introduce evidence pertaining to the December 11, 2004 incident.

THE COURT: Did you do that?

MS. HOCHHEISER: I was trying to move it so the jury wouldn't see it.

MS. WASSERMAN: After it had already been laying there for several minutes. I didn't know because there was a box on the other side of the desk, if I had seen it initially.

MS. HOCHHEISER: I didn't notice it was there. What I was trying to do was, I was trying to move it so the jury wouldn't see it, that's what I was trying to do.

MS. WASSERMAN: It was on the table for several minutes.

THE COURT: Look, what do you want me to do, Ms. Wasserman?

MS. WASSERMAN: If you draw attention to it, you make it worse. I don't know how you cure something like that and that's the problem.

MS. HOCHHEISER: Judge, I was trying to move it so the jury would not see it, that's what I was trying to do. It was in the basket with the sneakers that I took out and I took it out inadvertently. I didn't want the jury to see it so I moved it further away from the jury next to something so they would not see it. That's what I was trying to do.

MS. WASSERMAN: I don't know why it's in the courtroom to begin with.

MS. HOCHHEISER: It's in the basket with the other items.

THE COURT: Look, it's done. You're right, it should not have been in the courtroom. It's done. What do you want, at this point? Leave it alone, Ms. Wasserman, nothing needs to be done at this point. Let's step back, please.

MS. WASSERMAN: Can I just – it I think of something that I think will be curative, I would like to bring it up at a later date. Thank you.

T. 149-51.[10]

After the jury was excused for the day (on Friday), the prosecutor asked to make a record regarding the screwdriver, and stated that it was hidden behind a box and a laptop so the jurors

---

[10] Numbers preceded by "T." refer to pages from the trial transcript.

would not be able to see it.  T. 167.  The prosecutor again explained:

> What happened was, Judge, all of the evidence which has been in this cart since the jump, which is where the police have been keeping it, has been in here and I didn't remove the items.  They were all together and I didn't think to remove it, and that's my bad, but that was inadvertent.
> And when I removed the other items to take out these sneakers, that item ended up on my desk here and I was concerned that this jury would see it, so I took it from a place that they might be able to see it and I moved it to a hiding spot behind this box and this computer so they wouldn't be able to see it.

T. 168.  Defense counsel stated that they were not accusing the prosecution of bad faith, but the

screwdriver was not completely hidden from the jury's view.  T. 169-70.  Defense counsel asked

for some time, until Monday, to make a possible application.  T. 169.  The prosecutor asked

whether defense counsel could discern, from sitting at defense table, whether the item was a

screwdriver.  T. 170.  Ms. Wasserman replied that she could see the metal part but not the

handle.  Id.  The court instructed a court officer to sit in the jury box and asked whether he could

see anything; the court officer responded: "No, I can't."  T. 170-71.  Defense counsel persisted;

the court responded: "Enough, everybody, it's much to do about nothing at this point, really is.

If I am letting the defense think about something, fine, think about it.  I still can't see it, but

okay."  T. 171.

When trial resumed on Monday, defense counsel moved for a mistrial on the ground that

the suppressed screwdriver had been inadvertently placed on the corner of the prosecution table,

two or three feet from the jury box rail, in plain view of several jurors.  T. 172-74.  Defense

counsel stated: "The problem is twofold.  The People opened, specifically referred to a

screwdriver in possession of Mr. Rembert.  There was a timely objection made by defense

counsel during the opening statement which your Honor overruled."  T. 173-74.  The court

responded: "Right, because it's on the video and the video is not suppressed."  T. 174.  Defense

counsel argued that a mistrial was warranted because the jury would not be able to render a verdict solely on the admissible evidence: "Judge, they saw that video. They saw Mr. Rembert having some contact with that. There was an opening statement referring to a screwdriver and there it is, they can see it." Id. The court responded: "No, they could see it on the video. They could see the screwdriver. That's the screwdriver they know about." Id. Defense counsel asked the court, if it intended to deny the motion for a mistrial, to reconsider its *Ventimiglia* ruling to preclude the prosecution "from mentioning a screwdriver" in order to "lessen the prejudicial impact of what was inadvertently placed in front of [the jury]." T. 175.

The prosecutor stated that she did not recall where the screwdriver was initially placed, but she "almost immediately" moved it out of the jurors' view. T. 175. She continued:

> [J]ust so the record is clear, the screwdriver is in a tube and it also has a lot of paper around it so it's not like it's sitting on – like a plain screwdriver was sitting on a table. It's in a tube. It has paper around it and there is no indication that anybody actually saw it, and if it was on the table where somebody could actually see it, it was a moment before I moved it.

T. 176. Defense counsel disagreed with the prosecution as to the length of time the screwdriver was on the table, but did not dispute that the screwdriver had paper around it and was inside a tube. T. 178. The court denied defense counsel's motion for a mistrial. Id.

The prosecution stated that it would not elicit evidence regarding the December 2004 incident, but sought clarification regarding the May 11th incident:

> With regard to the May 11th incident, the People are permitted to inquire solely to the extent he is found at 16 East Fourth Street by the super, but we discussed it, it's going to actually be the civilian whose name is Luan Zherka. He is on the witness list and he is convicted of the burglar's tools. We have the certification of conviction and that are found inside his jacket pocket.
>
> I have the police officer who found the burglar's tools, but just so we are clear, the burglar's tools are – this was part of my Ventimiglia application, a flat head screwdriver, a phillips head screwdriver, a crowbar, two small red flashlights, three small pocket knives and a bag, so I want the Court to be clear

and we are all clear, those were the items and those were the burglar's tools, so
we are all on the same page.

T. 177, 184.  Defense counsel reiterated their request "to narrow the scope of that ruling to

preclude [the prosecutor] from going into those screwdrivers."  T. 185.  The court agreed:

"All right.  Eliminate the screwdrivers, Ms. Hochheiser.  My ruling was burglar's tools.

Eliminate the screwdrivers and you can go into the other tools, okay?"  Id.

Luan Zherka testified about the events underlying petitioner's May 2011 conviction.  T.

186-94, 202-04.  On March 22, 2011, Mr. Zherka lived on the ground floor of a multi-resident

apartment building located at 16 East 4th Street, Mount Vernon, New York.  T. 188.  He shared a

private entrance with his neighbors across the hall.  T. 188-89.  Only Mr. Zherka, his neighbors,

the superintendent and the landlord had keys to the door of that private entrance.  T. 189-90.

Around 11:00 p.m., Mr. Zherka heard a noise in the hallway.  T. 190-91.  He opened his door

and saw petitioner, a stranger, crouched along the side of the wall wearing extremely dark

clothing.  T. 191-92.  Mr. Zherka asked petitioner who he was, how did get in and what was he

doing; petitioner said he had come to visit Zherka's neighbors and the door was open.  T. 202.

Mr. Zherka loudly told petitioner to knock on the neighbors' door; when petitioner did not,

Zherka yelled out several times to his neighbors that someone was in the hallway saying he was

there to visit them.  T. 202-03.  The neighbors came out and then called the police.  T. 203.

Police Officer Derek Williams testified that he responded to the scene, where he met with

two other patrol officers who were already holding petitioner.  T. 195-97.  Officer Williams took

petitioner into custody and searched him.  T. 197.  Officer Williams recovered a brown cloth bag

containing a ten-inch crowbar and two flashlights, a black garbage bag and two small pocket

knives.  T. 198.

The prosecution, without objection from defense counsel, moved into evidence (and read for the jury) petitioner's certificate of conviction stemming from the March 22, 2011 incident, reflecting petitioner's guilty plea to possession of burglar's tools.  T. 204.  The Court then addressed the jury:

> All right, jurors, the evidence you just heard, the testimony from Mr. Zherka and Officer Williams, that evidence was not offered and must not be considered for the purpose of proving that the defendant had a propensity or predisposition to commit the crimes charged in this case.  It was offered as evidence to negate defendant's contention that he did not enter the building in this case with the intent to commit a crime, but instead to find a place to sleep.
> If you find the evidence from these witnesses believable, you may consider it for that limited purpose and for none other.

T. 205.

Frank Pllumbaj, superintendent at 472 Gramarten Avenue, testified as the sole witness for the defense.  R. 218-41.  On the morning of Saturday, November 12, 2011, the porter told Pllumbaj that the door to elevator room #3 was open.  T. 219-20.  He went downstairs, saw the open door to elevator room #3, and went inside to check that everything was secure.  T. 221. The day before, he had left about $2,000 worth of tools in a shopping cart in the room; the shopping cart and all of the tools (which included a circular saw, a hand drill, a torch and a sawzall) were still there.  T. 222-24.  He noticed that a piece of red luggage was missing from the room.  T. 223.  The luggage had been there for at least five years and, although it was dusty, it was in pretty fair condition; Mr. Pllumbaj believed it belonged to the previous superintendent. T. 230-31, 238-39.  The locks on the doors to elevator room #3 and the meeting room were broken; they were in good working order prior to this incident.  T. 236-37.  Mr. Pllumbaj replaced both locks with new ones.  T. 228.

Following closing arguments, the court charged the jury.  T. 266-96.  Toward the

beginning of its instructions, the court reminded the jury: "Where evidence was admitted for a limited purpose, you must only consider the evidence for that limited purpose." R. 268.  Shortly thereafter, the court reiterated the limiting instruction given during trial:

> There is evidence that on another occasion the defendant engaged in criminal conduct.  That evidence was not offered and must not be considered for the purpose of proving that the defendant had a propensity or predisposition to commit the crimes charged in this case.  It was offered as evidence to negate the defendant's contention that he did not enter the building with the intent to commit a crime, but to find a place to sleep.
> If you find the evidence believable, you may consider it for that limited purpose and for none other.

T. 205, 276-77.

Later that day, on September 12, 2012, the jury returned a verdict finding petitioner guilty of second degree burglary, petit larceny and fourth degree criminal mischief.  On December 18, 2012, petitioner was sentenced (as a second violent felony offender) to a determinate prison term of ten years followed by five years of post-release supervision on the burglary conviction, and two definite one-year terms of incarceration on the petit larceny and criminal mischief convictions.

D.  Direct Appeal

Petitioner, by and through counsel, timely appealed his conviction to the Appellate Division, Second Department on the following grounds: (1) petitioner was deprived of a fair trial because the trial court erroneously admitted proof of his prior conviction for possession of burglar's tools; and (2) the evidence was legally insufficient to support a conviction on the petit larceny charge.  Exh. 2, at 12-22.  On or about February 10, 2015, petitioner submitted a Pro Se Supplemental Brief to the Second Department (Exh. 4) wherein he argued: (1) he was denied a fair trial when the prosecutor committed misconduct by placing the screwdriver in "plain view"

of the jury and mentioning a screwdriver during opening and closing arguments; and (2) the trial court erred when it denied defense counsel's request for a mistrial. Exh. 4, at 25-42. By Decision and Order dated January 21, 2015, the Second Department affirmed petitioner's conviction. People v. Rembert, 124 A.D.3d 805, 1 N.Y.S.3d 367 (2d Dep't 2015). Petitioner, by and through counsel, timely submitted an application for leave to appeal to the New York Court of Appeals, wherein he sought review of all of the claims raised in his initial appellate brief and *pro se* supplemental brief. Exh. 8. The Court of Appeals denied petitioner leave to appeal on May 20, 2015. People v. Rembert, 25 N.Y.3d 1076, 34 N.E.3d 378, 12 N.Y.S.3d 627 (Table) (2015).

E.  Collateral Proceeding

On or about September 14, 2015, petitioner filed a Notice of Motion to Vacate the judgment of conviction pursuant to CPL 440.10, wherein he argued, *inter alia*, that trial counsel was ineffective for (1) failing to investigate petitioner's alleged mental health defect and (2) failing to request that the court order a mental health examination pursuant to CPL 730.30. Exh.11, at 19-26. By Decision and Order dated March 7, 2016, the trial court denied petitioner's motion. Exh. 15. Petitioner sought leave to appeal (Exh. 15); by Decision and Order dated August 8, 2016, the Second Department denied petitioner's application. Exh. 17.

F.  The Instant Petition

On or about September 26, 2016, petitioner timely[11] filed the instant Petition for a Writ of Habeas Corpus (Dkt. #1), seeking habeas relief on the following grounds: (1) the trial court abused it discretion when it allowed proof of petitioner's prior conviction for possession of

---

[11] See 28 U.S.C. § 2244(d)(1).

burglar's tools; (2) trial counsel was ineffective because she failed to investigate petitioner's alleged mental health issues; (3) the evidence was legally insufficient to support a conviction for petit larceny; and (4) the trial court erred when it denied defense counsel's request for a mistrial based upon the prosecutor's misconduct.[12]

### III. APPLICABLE LAW

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). "The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." Harrington v. Richter, 562 U.S. 86, 97 (2011). Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to habeas review are summarized below.

---

[12] By letter dated February 19, 2018 (Dkt. #19), petitioner stated he had filed a writ of error coram nobis and requested a stay of habeas proceedings pending a ruling from the Second Department. Respondent opposed a stay. Dkt. #20. On April 24, 2018, I denied petitioner's application for a stay, on the ground that he had failed to demonstrate good cause for his failure to exhaust his ineffective assistance of appellate counsel claim earlier in the litigation. Dkt. #21. Petitioner objected to my ruling; on May 10, 2018, Your Honor affirmed my decision. Dkt. #22. By letter dated August 13, 2018, petitioner advised this Court (1) that the Second Department had denied his motion for a writ of error coram nobis and (2) he had decided not to appeal that denial.

A. Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus

petition seeking relief from a state court conviction. See 28 U.S.C. § 2244(d)(1). The one-year

limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or
> the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in
> violation of the Constitution or laws of the United States is removed, if the applicant was
> prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the
> Supreme Court, if the right has been newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have
> been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed

application for state post-conviction relief, or other collateral review, of a claim raised in the

petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling,

which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely

filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S.

408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's

circumstances, but rather to the severity of the obstacle impeding compliance with a limitations

period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is

not enough for a party to show that he experienced extraordinary circumstances. He must

further demonstrate that those circumstances caused him to miss the original filing deadline."

Id. Additionally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking

-14-

equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

B. Procedural Default

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or that he is actually innocent. See Bousley, 523 U.S. at 622; Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002). A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris, 489 U.S. at 263 (internal quotation marks omitted). A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376). To this end, the Second Circuit has set forth the following

"guideposts" for evaluating the adequacy of the state procedural bar in the context of "the

specific circumstances presented in the case, an inquiry that includes an evaluation of the

asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule would serve
> a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

C.  Exhaustion

A federal court may not grant habeas relief unless the petitioner has first exhausted his

claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claims.  Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). In doing so, a petitioner need not cite chapter and verse of the Constitution; there are a number of other ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court.

See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural

default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain

unreviewable by a federal court.

D. Standard of Review

    "[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions. In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v.

McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a). When reviewing petitions filed

subsequent to the AEDPA's effective date, a federal court may not grant habeas relief unless the

petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States" or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). The AEDPA

deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the

merits in State court proceedings." 28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149, 154-

55 (2d Cir. 2007). "A state court adjudicates a state prisoner's federal claim on the merits when

it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." Jimenez

v. Walker, 458 F.3d 130, 140 (2d Cir. 2006) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d

Cir. 2001)).

    A state court's decision is "contrary to" clearly established Federal law if (1) "the state

court applies a rule that contradicts the governing law set forth [by the Supreme Court of the

United States]" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court] decisions. And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even 'clear error' will not suffice." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." Id. at 1706-07 (quoting Harrington, 131 S. Ct. at 786-87) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. §2254(e)(1). "A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Cardoza v. Rock, 731 F.3d 169, 178 (2d Cir. 2013) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)).

## IV. ANALYSIS

### A. Prior Conviction

As his first ground for habeas relief, petitioner argues that the trial court abused it

discretion when it allowed proof of petitioner's previous conviction for possession of burglar's tools. Petitioner raised this claim on direct appeal; the Second Department denied the claim on its merits:

> The Supreme Court's *Molineux* ruling (see *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286) constituted a provident exercise of discretion. The evidence was admissible to show the defendant's intent to commit the crime of burglary in the second degree, and the probative value exceeded the potential for prejudice to the defendant. In addition, the Supreme Court's limiting instructions to the jury served to alleviate any potential prejudice resulting from the admission of the evidence.

People v. Rembert, 124 A.D.3d at 805, 1 N.Y.S.3d at 368 (internal citations omitted). The Appellate Division's decision represents the last reasoned state court decision to address petitioner's challenge to admission of evidence of his prior conviction.[13] Accordingly, on habeas review, I must determine whether the Second Department's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

"Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived [him] of a fundamentally fair trial." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983). Thus, in order to succeed on his claim, petitioner must demonstrate: (1) that the trial court's evidentiary ruling was erroneous under state law; and (2) that the error amounted to the denial of his constitutional right to a fair trial. See DeJesus v. Superintendent of the Attica Corr. Facility, No. 12 Civ. 3932, 2017 WL 6398338, at *27-28 (S.D.N.Y. Dec. 13, 2017), *report and recommendation adopted*, 2018 WL 4043144 (S.D.N.Y.

---

[13] Respondent acknowledges that petitioner has exhausted all of the claims presented for habeas review. See Respondent's Memorandum of Law and Exhibits (Dkt. #7) at 5 n.1.

Aug. 7, 2018).[14] "This is a heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." Delancey v. Lee, No. 15 Civ. 891, 2019 WL 9051134, at *17 (E.D.N.Y. Nov. 4, 2019) (quotation marks and citation omitted), *report and recommendation adopted*, 2020 WL 3084285 (E.D.N.Y. June 10, 2020).

Petitioner fails to demonstrate that the trial court's evidentiary ruling was erroneous under state law. "Under New York law, evidence of uncharged crimes, prior convictions or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime." Lleshi v. LaClair, No. 13 Civ. 5874, 2017 WL 1319798, at *11 (S.D.N.Y. Jan. 26, 2017), *report and recommendation adopted*, 2017 WL 1319927 (S.D.N.Y. Apr. 7, 2017). Where "there is a proper nonpropensity purpose, the decision whether to admit such evidence rests upon the trial court's discretionary balancing of probative value and unfair prejudice." People v. Ramsaran, 154 A.D.3d 1051, 1054, 62 N.Y.S.3d 555, 560 (3d Dep't 2017) (quotation marks and citation omitted). "Moreover, a limiting jury instruction may alleviate any prejudice resulting from the admission of the evidence." DeJesus, 2017 WL 6398338, at *29 (quotation marks and citation omitted). Here, as the trial court and the Second Department held, evidence of petitioner's prior conviction

---

[14] Petitioner does not challenge the constitutionality of the state evidentiary rule itself. See Scrimo v. Lee, 935 F.3d 103, 115 (2d Cir. 2019) ("[I]f the evidentiary ruling was correct pursuant to a state evidentiary rule, our inquiry is more limited. We consider whether the evidentiary rule is arbitrary or disproportionate to the purposes it is designed to serve."); Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) (distinguishing between cases where trial court's erroneous evidentiary ruling deprived petitioner of a fair trial and cases addressing the constitutionality of the state evidentiary rule).

for possession of burglar's tools was admissible to show petitioner's intent to commit the crime

of burglary in the second degree, and the probative value of that evidence exceeded the potential

for prejudice to petitioner.  Further, any potential prejudice was ameliorated by the trial court's

limiting instruction, which was twice given to the jury (first, immediately following the disputed

testimony, then repeated during jury instructions).  "As the Supreme Court has frequently

observed, the law recognizes a strong presumption that juries follow limiting instructions."

United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006).  Thus, the trial court's evidentiary

ruling "presents no cognizable constitutional issue appropriate for federal habeas review."

DeJesus, 2017 WL 6398338, at *31.  See Conroy v. Racette, No. 14 Civ. 5832, 2017 WL

2881137, at *10 (E.D.N.Y. July 6, 2017) ("The probative value of [the evidence in question]

evidence thus outweighed its potential prejudicial effect and the evidence of petitioner's prior

misconduct was admissible under New York law. As such, petitioner is not entitled to habeas

relief on this ground and the Court need not inquire into whether he was deprived of his right to

a fundamentally fair trial.").[15]  Accordingly, I conclude and respectfully recommend that

petitioner's claim based upon an allegedly erroneous evidentiary ruling must be dismissed.

B.  Ineffective Assistance of Trial Counsel

     Petitioner argues, as his second claim for habeas relief, that trial counsel was ineffective

because she failed to investigate petitioner's alleged mental health issues.  Petitioner presented

this claim in his CPL 440.10 motion; the County Court denied the claim on its merits.  Exh. 14,

at 11-16.  The County Court's written decision denying the claim on its merits represents the last

---

[15]  In any event, "[t]he Supreme Court has not decided whether the admission of 'prior crimes' evidence would violate due process." Lleshi, 2017 WL 1319798, at *11. The state court's decision was, therefore, neither contrary to or an unreasonable application of clearly established Supreme Court precedent.

reasoned state court decision to address petitioner's ineffective assistance of trial counsel claim.

Accordingly, on habeas review, I must apply the deferential AEDPA review standard in

evaluating petitioner's ineffective assistance claim.

In his CPL 440.10 motion, petitioner argued that trial counsel was ineffective because

she knew petitioner suffered from a variety of severe psychiatric disorders but failed to either (1)

request a competency hearing or (2) introduce evidence of plaintiff's mental illness to undermine

the element of intent.. Exh. 11, at 19-26.  In support of his contention, petitioner attached certain

documents related to his mental health history, including discharge summaries, progress notes

and memos from the Department of Veterans Affairs.  Exh. 11, Attachment A-1, A-2.  Petitioner

also attached a letter from trial counsel (in response to his letter asking why counsel did not

introduce evidence of his mental illness).  Exh. 11, Attachment C.  In her letter, trial counsel

acknowledged that she possessed (at the time of trial) medical records from the Department of

Veterans Affairs indicating that petitioner had previously been diagnosed with PTSD.  Id. at 1.

Trial counsel explained why she did not introduce this evidence (or seek a competency hearing):

> I represented you for just over a full year from the time you were arrested to the
> time that you were sentenced after the trial.  You and I obviously had many[,]
> many conversations over the course of that year.  We discussed everything from
> your personal background to trial strategy on numerous occasions.  I always
> found you to be coherent, intelligent and in fact you made several suggestions to
> me throughout the process which I made use of throughout the case . . . .  When
> we discussed the case, I always felt that you understood the nature of the charges.
> This is based on the fact that you were an active participant in discussing our trial
> strategy of trying to get a Petit Larceny or Criminal Mischief 4th and Trespass
> conviction as opposed to the Burglary 2. . . .

Id.

The County Court denied petitioner's 440.10 motion.  At the outset, the County Court

found that the records submitted by petitioner "are unreliable, inapplicable to the relevant time

period and support a finding of competence." Exh. 14, at 11.  Specifically, the County Court

noted that the medical records were incomplete and reflect treatment which ended over one

month prior to petitioner's arrest.  Id.  The County Court further held that, even assuming the

relevance of the medical records, they do not support petitioner's contentions and, in fact,

undermine the allegation that he was incompetent to stand trial.  Id. at 12-13.  The County Court

also held that the Veterans Assessment and VA Rating Decision were of limited evidentiary

value because (1) petitioner did not submit the underlying supportive documentation and (2) the

records were created after petitioner's conviction.  Id. at 13.  The County Court found, in any

event, that the Veterans Assessment and VA Rating Decision also undermine petitioner's claim

of incompetence.  Id. at 13-14.  Finally, the County Court (noting defense counsel's letter and

the trial court's multiple interactions with petitioner) held:

> [B]esides the documents relied on by defendant, the record here contains
> numerous other facts undercutting the assertion that defendant, at the time of trial
> and pretrial proceedings, was suffering from any mental condition that left him
> incapable of understanding or participating in such proceedings.  In fact, the
> evidence reflecting defendant's state of mind during the actual period of the
> criminal proceedings undermines the assertion of incompetency as, during the
> numerous criminal proceedings at which defendant participated, no judge or
> attorney viewed defendant as being at risk of being incapable of participating in
> the proceedings.

Id. at 14-15.  Accordingly the County Court denied petitioner's ineffective assistance of counsel

claim, noting further that "nothing in the record casts doubt upon the apparent effectiveness of

counsel who won the suppression of evidence, and undisputedly defended defendant vigorously

throughout the proceedings."  Id. at 16.

On habeas review, in order to establish his claim of ineffective assistance of trial counsel,

petitioner must demonstrate (1) that his attorney's performance "fell below an objective standard

of reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error,

"the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). A petitioner who seeks habeas review of ineffective assistance of counsel claims must overcome a "doubly deferential" standard of review. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[w]hen [AEDPA] applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

In considering whether counsel's performance was deficient under *Strickland*'s first prong, decisions by trial counsel that "fall squarely within the ambit of trial strategy, . . . if reasonably made," cannot give rise to a claim of ineffectiveness. United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). Moreover, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). The second prong focuses on prejudice to the petitioner. A habeas petitioner bears the burden of establishing *both* deficient performance and prejudice. See Greiner, 417 F.3d at 319. Thus, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Here, under the deferential AEDPA standard of review, there is indeed a reasonable argument that trial counsel was not ineffective. The County Court found that the medical records and documents submitted by petitioner were incomplete, inapplicable to the relevant

time period and undermine his claim of incompetence.  Petitioner has not proffered "clear and convincing evidence" to rebut these factual findings and, therefore, they are entitled to a presumption of correctness.  See 28 U.S.C. §2254(e)(1).  These findings, coupled with defense counsel's letter, provide a sound basis for the County Court's rejection of petitioner's claim. Further, although petitioner emphasizes trial counsel's failure to introduce his mental health history to undercut the element of intent, petitioner does not point to anything in the medical records which would allegedly cast doubt upon his ability to formulate the requisite intent.  More to the point, despite plaintiff's history of mental illness, it was not unreasonable for trial counsel to proceed with her chosen defenses: (1) that petitioner, who was homeless, entered the building with the intent only to find a place to sleep; and (2) that the suitcase was abandoned.  At bottom, petitioner fails to demonstrate that trial counsel's performance fell below an objective standard of reasonableness.  Accordingly, I conclude and respectfully recommend that petitioner's ineffective assistance of trial counsel claim must be denied.

C.  Insufficient Evidence

In ground three of the instant habeas petition, petitioner asserts that the evidence was legally insufficient to support a conviction for petit larceny.  He presented this argument to the Second Department on direct appeal; the Second Department rejected the claim on procedural grounds and, alternatively, on its merits:

> The defendant's contention that the evidence was legally insufficient to support his conviction of petit larceny is unpreserved for appellate review (see CPL 470.05[2]; . . .).  In any event, viewing the evidence in the light most favorable to the prosecution (See People v. Contes, 60 N.Y.2d 620, 467 N.Y.S.2d 349, 454 N.E.2d 932), we find that it was legally sufficient to establish the defendant's guilt of petit larceny beyond a reasonable doubt.

People v. Rembert, 124 A.D.3d at 805, 1 N.Y.S.3d at 367-68 (internal citations omitted).

New York's contemporaneous objection rule (codified at section 470.05(2) of New York's Criminal Procedure Law) "provides that, with a few exceptions not applicable here, New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." Downs v. Lape, 657 F.3d 97, 103 (2d Cir. 2011). "Under New York law, if a defendant presents evidence after the trial court has denied his motion to dismiss for insufficient evidence following the close of the People's case, he may not later present a legal sufficiency argument unless he renewed his motion at the close of all the evidence." Newman v. Lempke, No. 13 Civ. 531, 2016 WL 5478512, at *7 (W.D.N.Y. Aug. 9, 2016) (citing People v. Hines, 97 N.Y.2d 56, 61 (2001), *report and recommendation adopted*, 2016 WL 5468062 (W.D.N.Y. Sept. 29, 2016).[16]

The record here reveals that, at the close of the prosecution's case, defense counsel moved to dismiss the petit larceny count, on the ground that the prosecution failed to prove that the suitcase was "owned" and, therefore, that petitioner did not have permission to take it.  T. 206.  After the trial court denied defendant's motion, defense counsel elicited testimony from Frank Pllumbaj in an effort to establish, *inter alia,* that the suitcase had been abandoned.  At the close of the evidence, however, defense counsel failed to renew its motion to dismiss the petit larceny count and, thus, failed to preserve petitioner's insufficient evidence claim.  On direct appeal, although the Second Department rejected petitioner's insufficient evidence claim on its merits, it also explicitly invoked an "independent" state procedural ground (New York's

---

[16] Although the New York Court of Appeals has not overruled *Hines*, in People v. Finch, 23 N.Y.3d 408, 15 N.E.3d 307, 991 N.Y.S.2d 552 (2014), "the Court of Appeals has vitiated the rationale of *Hines*, at least in the case where the specific ground raised in an earlier motion has been decided and nothing new has come out in the defendant's case which would implicate the propriety of the prior ruling, thereby rendering any further motion unnecessary." People v. Ganz, 50 Misc. 3d 79, 83, 24 N.Y.S.3d 486, 489 (N.Y. App. Term. 2015).

contemporaneous objection rule) as a basis for its decision.  Where a state court has expressly relied on a procedural default, federal habeas review is foreclosed even if the state court also addressed the merits of the federal claim.  See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (federal habeas review barred where state court held claim "not preserved for appellate review" but then ruled on the merits of the claim "in any event").

The Second Circuit has consistently recognized New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review.  See, e.g., Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011); Downs, 657 F.3d at 104; Garvey, 485 F.3d at 720; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) (federal courts "have observed and deferred to New York's consistent application of its contemporaneous objection rules").  Further, the Appellate Division's application of CPL 470.05(2) in this case was not exorbitant.  As to the first *Cotto* consideration, it is "meaningless to ask whether the alleged procedural violation was actually relied on in the trial court–the violation only first occurred when defendant raised an argument on appeal that he had not raised earlier." See Garvey, 485 F.3d at 719.  Indeed, perfect compliance with CPL 470.05 would have given the trial court an opportunity to address head-on the issues petitioner now raises.  The second *Cotto* consideration clearly weighs against petitioner because, as discussed above, New York case law requires compliance with the contemporaneous objection rule under the specific circumstances presented here.  The third *Cotto* consideration similarly disfavors petitioner because, just as in *Garvey*, petitioner did not simply violate the "formal requirements" of CPL 470.05(2), but rather "the very essence" of the rule.  See id. at 720.  Moreover, petitioner's compliance would have served a legitimate purpose in that "[a]t a bare minimum, the trial court could have developed a factual record supporting its decision[s] that could then properly be reviewed on appeal." See Whitley,

642 F.3d at 290.

Because there is an adequate and independent finding by the Appellate Division that petitioner procedurally defaulted on the insufficient evidence claim he now asserts as grounds for habeas relief, petitioner must demonstrate in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman, 501 U.S. at 750; Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009). Petitioner, however, has made no attempt to show cause or prejudice, and there is no indication that this Court's failure to address the merits of the unpreserved claims would result in a fundamental miscarriage of justice. Accordingly, I conclude, and respectfully recommend, that petitioner's procedural default bars federal habeas review of his insufficient evidence claim.[17]

D.  Denial of Mistrial on Ground of Prosecutorial Misconduct

As his fourth (and final) ground for habeas relief, petitioner argues that the trial court erred when it denied defense counsel's request for a mistrial based upon the prosecutor's misconduct. Specifically, petitioner asserts that a mistrial was warranted because the prosecutor disregarded the court's suppression ruling and (a) mentioned the screwdriver in her opening statement and closing argument and (b) intentionally and/or knowingly displayed the screwdriver in plain view of the jury. Petitioner raised this claim on direct appeal; the Second Department denied the claim on its merit, holding that the trial court "providently exercised its discretion in denying [petitioner's] motion for a mistrial, which was based on certain conduct by the prosecutor." People v. Rembert, 124 A.D.3d at 805-06, 1 N.Y.S.3d at 367-68 (citations

---

[17] Dismissal of a claim for habeas relief on the ground of procedural default amounts to "a disposition of the habeas claim on the merits." See Carvajal, 633 F.3d at 104.

omitted).  Because the Appellate Division's written decision represents the last-reasoned state

court decision to address petitioner's prosecutorial misconduct claim, I must review that claim in

accordance with the deferential AEDPA review standard.

Petitioner's fourth claim is a hybrid of two arguments: (1) failure to grant a mistrial; in

the face of (2) alleged prosecutorial misconduct.  With respect to habeas review of prosecutorial

misconduct claims, the Second Circuit has set forth the following "clearly established"

governing law:

> First, on federal habeas review, the relevant standard is " 'the narrow one of due
> process, and not the broad exercise of supervisory power.' " *Darden [v.
> Wainwright]*, 477 U.S. [168,] 180, 106 S.Ct. 2464 (quoting *[Donnelly v.]
> DeChristoforo*, 416 U.S. [637,] 642, 94 S.Ct. 1868).  Thus, while the State has a
> "duty to refrain from improper methods calculated to produce a wrongful
> conviction," *Berger [v. United States]*, 295 U.S. [78,] 88, 55 S.Ct. 629, such
> methods will warrant habeas relief only if they " 'so infected the trial with
> unfairness as to make the resulting conviction a denial of due process,' " *Darden*,
> 477 U.S. at 180 (quoting *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868).  The
> habeas court must consider the record as a whole when making this
> determination, because even a prosecutor's inappropriate or erroneous comments
> or conduct may not be sufficient to undermine the fairness of the proceedings
> when viewed in context. *See [United States v.] Young*, 470 U.S. [1,] 16-17, 105
> S.Ct. 1038; *Darden*, 477 U.S. at 182, 106 S.Ct. 2464 (applying *Young* ); *see also
> DeChristoforo*, 416 U.S. at 647-48, 94 S.Ct. 1868 (distinguishing between
> "ordinary trial error of a prosecutor" and the type of "egregious misconduct . . .
> [that] amount[s] to the denial of constitutional due process").  When reviewing
> such claims under the "unreasonable application prong" of § 2254(d)(1), the
> habeas court must keep in mind that this standard is a "very general one" that
> affords courts "leeway in reaching outcomes in case-by-case determinations."
> *[Parker v.] Matthews*, 132 S.Ct. [2148], 2155 [2012] (quotation marks and
> ellipses omitted).

Jackson v. Conway, 763 F.3d 115, 146 (2d Cir. 2014).  "There is a similarly high bar to relief

when a habeas petitioner is challenging the denial of a motion for mistrial.  On habeas review,

the petitioner must show that the denial of a motion for a mistrial deprived him of a

fundamentally fair trial." Williams v. Lee, No. 14 Civ. 2981, 2017 WL 4685273, at *14

(S.D.N.Y. Aug. 8, 2017) (quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 4685105 (S.D.N.Y. Oct. 17, 2017).

Petitioner fails to satisfy this high burden.  First, evidence at trial included video surveillance footage; during opening and closing statements, the prosecutor argued that the video depicted petitioner holding a screwdriver.  Thus, the prosecutor's statements amounted to fair comment on the evidence.  Second, defense counsel argued that the prosecutor inadvertently placed the screwdriver on the table, rather than intentionally or in bad faith.  T. 169-70, 172-74.  Third, petitioner fails to demonstrate that the jury actually saw a screwdriver on the table.  The prosecutor asked whether defense counsel could discern, from sitting at defense table, whether the item was a screwdriver.  T. 170.  Ms Wasserman replied that she could see the metal part but not the handle.  Id.  The court instructed a court officer to sit in the jury box and asked whether he could see anything; the court officer responded: "No, I can't."  T. 170-71.  Defense counsel did not dispute that the screwdriver had paper around it and was inside a tube.  T. 178.  Finally, after denying defense counsel's motion for a mistrial, the trial court revisited its *Molineux/Ventimiglia* ruling and precluded the prosecution from eliciting any evidence that screwdrivers were recovered from petitioner's person during the May 2011 incident.  T. 185.  At bottom, while the prosecutor's inadvertent placement of the screwdriver on the table was error, it did not rise to the level of "egregious misconduct" amounting to a denial of due process or rendering the trial fundamentally unfair.  Further, under the totality of the circumstances, the trial court's refusal to grant a mistrial did not deprive petitioner of his right to a fair trial.  Accordingly, I conclude and respectfully recommend that petitioner's fourth claim is meritless and must be dismissed.

## V. CONCLUSION

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the instant petition for a writ of habeas corpus should be denied in its entirety.  Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253©; Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated:   November ⚘, 2020
   White Plains, New York

Respectfully Submitted,

PAUL E. DAVISON, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c), Rule 72(b) of the Federal Rules of Civil Procedure and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from service of this Report and Recommendation to serve and file written objections.  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  Fed. R. Civ. P. 6(d).  See also Fed. R. Civ. P. 6(a).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Cathy Seibel, at the Hon. Charles L. Brieant, Jr. Federal Building and

United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the

chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County,

517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Seibel.


A copy of this Report and Recommendation has been mailed to:

Paul Rembert
26 Yonkers Avenue #3L
Yonkers, NY 10703